J-S26042-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: D.A.W., JR., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: D.A.W., SR., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 568 MDA 2021 |

Appeal from the Decree Entered April 1, 2021
In the Court of Common Pleas of Lancaster County Orphans' Court at
No(s):  2020-01220

| | | |
|---|---|---|
| IN RE: S.J.W., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: D.A.W., SR., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 569 MDA 2021 |

Appeal from the Decree Entered April 1, 2021
In the Court of Common Pleas of Lancaster County Orphans' Court at
No(s):  2020-01219

BEFORE:  STABILE, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.          **FILED: OCTOBER 29, 2021**

D.A.W., Sr. ("Father"), appeals from the Decrees granting the Petitions filed by the Lancaster County Children and Youth Social Services Agency (the "Agency") and involuntarily terminating his parental rights to his minor, dependent children, D.A.W., Jr. (a male born in February 2016), and S.J.W.

(a female born in March 2015) (collectively, the "Children"), pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).[1] We affirm.

In its Opinion, the trial court summarized the factual and procedural history underlying this appeal as follows:

> The Agency has been involved with the … family since 2014. Concerns have included drug use, mental health needs of the parents, and domestic violence. In 2018, the Agency validated concerns for domestic violence, physical mistreatment, parental substance abuse, parental mental health concerns, inappropriate discipline, failure to follow through with child wellness visits, and conduct by the parents that placed the Children at risk. On September 13, 2018, the Agency received a referral for the … family after the police responded to a domestic dispute in the family home. Father was arrested after drugs and drug paraphernalia were located in the residence. The next day, a caseworker traveled to the residence to conduct a child welfare check. Upon arrival, the caseworker noted that the house was filthy[;] the [C]hildren were eating from the floor[;] and there appeared to be urine on the floor. At that time, Mother tested positive for cocaine, opiates, alcohol, benzodiazepines, and OxyContin. As such, the Lancaster City Bureau of Police took protective custody of the Children.
>
> On September 17, 2018, the Agency filed [P]etitions for [t]emporary [c]ustody and [d]ependency. The Agency's [Petitions] were granted. On October 2, 2018, the Children were adjudicated dependent due to parental substance abuse, domestic violence, and neglecting the needs of the Children. At the time of the hearing, Father was incarcerated for the drug charges incurred at the time of the Children's placement. On that same date, the court approved a child permanency plan for all of the [C]hildren.

Trial Court Opinion, 3/21/21, at 1-2 (citations omitted).

_____

[1] In a separate Decree, the trial court involuntarily terminated the parental rights of Children's mother, N.D. ("Mother"), pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). Mother has not filed an appeal from the Decree terminating her parental rights to the Children, nor has she filed a brief in Father's appeal.

The trial court subsequently held several permanency review hearings. Following the final permanency review hearing, the Agency filed a Petition to terminate Mother's and Father's parental rights. Petition, 7/9/20, at 1-4 (unnumbered). On August 18, 2020, the trial court held a hearing on the termination Petition, which was ultimately continued until November 10, 2020. At the hearing, the Agency presented the testimony of Michelle Duke, a drug and alcohol consultant with the Lancaster Freedom Center; Jessica Worall, YWCA parent empowerment program coordinator; Holly Smith, a Bethanna visitation coordinator; Jason Hagy, a Lancaster City Police Officer; and Diane Edmond ("Edmond"), a licensed therapist with Jaskot Consulting.[2]

The hearing was continued to February 16, 2021, at which time the Agency presented the testimony of Lauren Miller, an Agency permanency caseworker. The trial court also heard testimony from Father. On April 1, 2021, the trial court entered Decrees terminating Father's parental rights to the Children pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). On April 30, 2021, Father timely filed Notices of Appeal along with Concise Statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). On May 17, 2021, this Court, acting *sua sponte*, consolidated the appeals.

---

[2] Edmond was qualified as an expert witness in the field of psychological counseling, capable of rendering an opinion as to the bond between Mother, Father, and the Children. N.T., 11/10/20, at 67.

In his brief on appeal, Father raises three issues:

1. Whether the [trial court] erred in its Decree dated April 1, 2021, [holding] that the [] Agency had met its burden in proving that Father's parental rights should be terminated when there was evidence he was working on and completing his goals on his child permanency plan throughout the time the [C]hildren were in custody[?]

2. Whether the [trial court] erred in its [Decree] dated April 1, 2021[,] that the [] Agency had met its burden in proving that [F]ather's parental rights should be terminated and not allow [F]ather additional time to complete the requirements to enable reunification when [F]ather [had] testified under oath to the progress and efforts that were made towards reunification with [the Children][?]

3. Whether the [trial court] erred in ruling that the [C]hildren's best interests and welfare would be served by termination of parental rights when there was evidence of father-children bonds[?]

Father's Brief at 8.

We will address Father's first two issues together, as they are related. First, Father asserts that the Children were not "removed from his care" pursuant to sections (a)(5) and (8) because, while he was occasionally present at Mother's residence with the Children, he did not live there and as a result, the Children were not in his care. *Id.* at 17-18. Father points to the "stated intentions" of Mother and Father to return the Children to Mother, with Father either living with his mother or living independently. *Id.* at 18. Additionally, Father claims that the Agency failed to prove that termination best serves the needs and welfare of the Children, as he had progressed towards his reunification goals. *Id.*

In Father's second issue, he asserts that termination is premature because of his progress towards his reunification goals. *Id.* at 18-21. Father claims that termination was inappropriate under subsection (a)(1), because he has secured stable housing and employment; he inquired as to the Children's condition and appearance; and he has attended court hearings and visits concerning the Children. *Id.* at 20. Father asserts that termination was also inappropriate under subsection (a)(2) because he had been working diligently to remedy the conditions leading to incapacity prior to the Petition's filing. *Id.* Though Father concedes that he had not addressed all the requirements prior to the Petition being filed, he claims that his progress would have allowed him to be reunified with the Children, if given more time. *Id.*

In reviewing an appeal from a decree terminating parental rights, we adhere to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; *R.I.S.*, 36 A.3d 567, 572 (Pa. 2011) (plurality). As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see also Samuel Bassett v. Kia Motors America, Inc.*, 34 A.3d 1, 51 (Pa. 2011); *Christianson v. Ely*, 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*

As we discussed in ***R.J.T.***, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. ***R.J.T.***, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead[,] we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. ***In re Adoption of Atencio***, 650 A.2d 1064, 1066 (Pa. 1994).

***In re I.E.P.***, 87 A.3d 340, 343-44 (Pa. Super. 2014) (quoting ***In re Adoption of S.P.***, 47 A.3d 817, 826-27 (Pa. 2012)).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. ***In re R.N.J.***, 985 A.2d 273, 276 (Pa. Super. 2009). Moreover, as we have explained, "[t]he standard of clear and convincing evidence is defined as testimony that is so 'clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.'" ***Id.*** (quoting ***In re J.L.C.***, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

"Satisfaction of the requirements in only one subsection of Section 2511(a), along with consideration of the provisions in Section 2511(b), is sufficient for termination." ***See In re Z.S.W.***, 946 A.2d 726, 729 (Pa. Super.

2008) (brackets and citation omitted). Here, we consider Sections 2511(a)(5), (8), and (b), which provide, in relevant part, as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\* \* \*

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(5), (8), (b).

When we review the trial court's analysis of subsection 2511(a)(5), we consider the following:

Under [subsection] 2511(a)(5), we … review the record to determine whether [a child has] been removed from [the parent] for six months and whether [the parent] can remedy the conditions leading to the removal of [the child]. **See**[] ***In the Interest of Lilley***, 719 A.2d 327, 334 (Pa. Super. 1998) (the child has been removed from the parents by the court and the conditions which led to placement of the child continue to exist and have not been remedied within a reasonable time and termination of parental rights would best serve the needs and welfare of the child). We also note that in considering the importance of stability to a child's welfare, the reasons why the child has been with the third party for so long must be taken into account. ***In Re: Adoption of Steven S.***, … 612 A.2d 465, 471 ([Pa. Super. ]1992), ***appeal denied***, … 625 A.2d 1194 ([Pa. ]1993).

***In re Adoption of T.B.B.***, 835 A.2d 387, 395 (Pa. Super. 2003).

Further, to terminate parental rights pursuant to 2511(a)(8), it must be demonstrated that "(1) [t]he child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." ***In re Adoption of M.E.P.***, 825 A.2d 1266, 1275-76 (Pa. Super. 2003). Once the 12-month period set forth in subsection (a)(8) has been established, the trial court must next determine whether the conditions necessitating placement persist, despite the reasonable, good-faith efforts the agency supplied over a realistic period of time. ***In re A.R.***, 837 A.2d 560, 564 (Pa. Super. 2003).

In its Opinion, the trial court analyzed the evidence supporting termination pursuant to subsections (a)(5) and (8) as follows:

Here, the Children have been outside of the care of their parents in excess of thirty months from the date of removal, and the conditions that led to their removal from their parents have not been remedied. Pursuant to the Child Permanency Plan approved by the court, Mother and Father both have goals that include: to improve mental health; to remain free from drugs or misuse of alcohol; to remain free from domestic violence; to remain crime free; to learn and use good parenting skills; to be financially stable to care for themselves and their Children; to obtain and maintain a home free and clear of hazards for themselves and their Children; and, to maintain an ongoing commitment to their Children. Mother and Father were able to complete their domestic violence goals. Father also remained crime free. All other goals on their plans have remained incomplete or ongoing for the duration of the case, with no realistic timeline for completion.

Notably, the established goals of using good parenting skills, remaining free from drugs or misuse of alcohol, and maintaining an ongoing commitment to the Children have been a consistent struggle for both Mother and Father. Neither parent has remained committed to living a life free from drugs or demonstrated their ability to prioritize learning how to parent and appropriately care for their Children. Neither Mother [n]or Father have successfully enrolled in parenting education, as [*sic*] both parents screened positive for drugs prior to the commencement of the classes. Mother and Father's abuse of drugs has adversely impacted their ability to work on their permanency plans. Importantly, the court was troubled by Father's testimony at the evidentiary hearing related to such. Father seemingly minimized his relapse into using drugs and did not seem to think it impacted his ability to care for and parent his Children. The court is sympathetic to the struggle of addiction, recovery, and relapse; however, Mother and Father do not appreciate the toll that their cyclic drug abuse has on their Children or their ability to care for them.

The court is required to analyze whether the parents are currently in a position to care for the child[ren], not if there is a possibility that they will be able to do so at some point in the future. Despite Father's stated "dream" of bringing his Children

- 9 -

home as soon as possible, the court finds that forcing these Children to endure more dependency for their parents to begin working on many aspects of their plan would run afoul of the public policy embodied in the Adoption and Safe Families Act of 1997—to move children toward permanency and away from foster placement limbo. ***See In re B.L.L.***, 787 A.2d 1007, 1016 (Pa. Super. 2001) (documenting the national and state policy through the Adoption and Safe Families Act of 1997 to move toward termination of parental rights after fifteen months where reasonable efforts have been made to reestablish the biological relationship). In its analysis of Mother and Father's current position, the court simply cannot justify allowing the Children to endure more uncertainty.

Trial Court Opinion, 3/29/21, at 23-24.

Our review discloses that the trial court's decision to terminate Father's parental rights under subsections (a)(5) and (8) is supported by competent, clear, and convincing evidence in the record, and we discern no abuse of discretion in this regard. ***See In re Adoption of T.B.B.***, ***supra***; ***In re Adoption of M.E.P.***, ***supra***. Accordingly, we can grant Father no relief on his first and second claims.

Next, we address Father's claim that the trial court abused its discretion in terminating his parental rights to the Children pursuant to section 2511(b). Father's Brief at 22-23. Father disputes the trial court's reliance on Edmond's testimony, and points to Edmond's lack of credentials in bonding assessments between parents and children. ***Id.*** at 22. Father points to the lack of in-person contact between himself and the Children due to the Covid-19 pandemic. ***Id.*** at 23. He further asserts that it is normal for the Children to be more bonded to foster parents that they see every day, versus biological

parents like Father, whom the Children only see occasionally and under supervision. *Id.* at 22-23. As such, Father argues that the Agency failed to provide sufficient, substantial evidence related to the Children's emotional needs, and the trial court erroneously relied on Edmond's report in doing so. *Id.* at 23.

We have explained that the focus in terminating parental rights under section 2511(a) is on the parent, but it is on the child pursuant to section 2511(b). *In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*). In reviewing the evidence in support of termination under section 2511(b), our Supreme Court has stated the following:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.[A.] § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, 71 A.3d at 267.

A parent's own feelings of love and affection for a child, alone, do not prevent termination of parental rights. *In re Z.P.*, 994 A.2d at 1121. Further, "a parent's basic constitutional right to the custody and rearing of his or her child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential

- 11 -

in a permanent, healthy, safe environment." ***In re B.,N.M.***, 856 A.2d at 856 (internal citations omitted). It is well settled that "we will not toll the well-being and permanency of [a child] indefinitely." ***In re Adoption of C.L.G.***, 956 A.2d at 1007 (citing ***In re Z.S.W.***, 946 A.2d at 732 (noting that a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting.")).

A parent's abuse and neglect are likewise a relevant part of this analysis:

A child's feelings toward a parent are relevant to the section 2511(b) analysis. Nonetheless, concluding a child has a beneficial bond with a parent simply because the child harbors affection for the parent is not only dangerous, it is logically unsound. If a child's feelings were the dispositive factor in the bonding analysis, the analysis would be reduced to an exercise in semantics[,] as it is the rare child who, after being subject to neglect and abuse, is able to sift through the emotional wreckage and completely disavow a parent…. Nor are we of the opinion that the biological connection between [the parent] and the children is sufficient in of itself, or when considered in connection with a child's feeling toward a parent, to establish a *de facto* beneficial bond exists. The psychological aspect of parenthood is more important in terms of the development of the child and [his or her] mental and emotional health than the coincidence of biological or natural parenthood.

***In re K.K.R.-S.***, 958 A.2d 529, 535 (Pa. Super. 2008) (internal citations and quotation marks omitted). "[A] parent's basic constitutional right to the custody and rearing of his … child is converted, upon the failure to fulfill his … parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." ***In re B., N.M.***, 856 A.2d at 856 (internal citations omitted).

In its Opinion, the trial court stated the following:

During the evidentiary hearing relative to the Agency's [P]etition, the court heard extensive testimony from a qualified expert witness in the field of psychological counseling capable of rendering an opinion as to the bond between the [p]arents and Children. The court found credible [] Edmond's testimony regarding the close bond [S.W.] and [D.W., Jr.,] have developed with their foster parents. In her evaluation, [] Edmond opined that the Children demonstrated signs of "disrupted bonding." Both [S.W.] and [D.W., Jr.,] appeared dysregulated during their visit with Mother and Father. [S.W.] became visually anxious when meeting with [] Edmond. [] Edmond further observed that [S.W.] did not seek support or comfort from her biological parents. She also refused [to] refer to her biological parents as "mommy" and "daddy" unless Mother or Father forced her to do so. [D.W., Jr.,] demonstrated similar, yet less severe behaviors. [] Edmond noted that [D.W., Jr.,] could not comprehend that he did not live with "his parents." Based on her interview, [] Edmond credibly stated that [D.W., Jr.,] does not have any memory of a time that he lived with Mother and Father. Nevertheless, termination has the potential for significant changes for the Children and their families. As [] Edmond stated, "bonding is a reciprocal attachment which is intended to be long term and the discontinuation of such would cause serious trauma." The best interest of the child, and not the interests of the parent, must guide the trial court. As repeatedly noted by th[is] Court, a child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting. ***In re: A.B.***, 19 A.3d 1084, 1089 (Pa. Super. 2011).

Trial Court Opinion, 3/29/21, at 25-26 (citations to record omitted).

Upon review, we conclude that there was competent evidence in the record from which the trial court could properly conclude that the termination of Father's parental rights served the Children's needs and welfare and was in their best interest pursuant to section 2511(b). The record supports the trial court's factual findings, and we discern no abuse of discretion or error of law in the trial court's legal conclusions. ***See In re Adoption of S.P.***, ***supra***; ***In re: T.S.M.***, ***supra***. Therefore, we cannot grant Father relief on this claim.

Based upon the foregoing, we affirm the Decrees terminating Father's parental rights with regard to the Children under sections 2511(a)(5), (8), and (b).

Decrees affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/29/2021